IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID JOSEPH MUNCHINSKI,          )
                                  )
                   Petitioner,    )
                                  )
v.                                )          Civil Action No. 2:07-CV-01712-LPL
                                  )          Magistrate Judge Lisa Pupo Lenihan
HARRY WILSON, Warden of State     )
Correctional Institute at Fayette; and )
ATTORNEY GENERAL'S OFFICE OF      )
PENNSYLVANIA,                     )
                                  )
                   Respondents.   )

## <u>MEMORANDUM OPINION</u>

Petitioner David Joseph Munchinski (hereinafter: Petitioner) filed this Petition for Writ of Habeas Corpus (Doc. No. 1) on December 15, 2007, seeking to challenge, under 28 U.S.C. § 2254, his 1986 convictions for two homicides in the Court of Common Pleas of Fayette County, Uniontown, Pennsylvania. For the reasons stated below, this Court finds that this petition constitutes a "second or successive" petition under the meaning of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter: AEDPA). <u>See</u> 28 U.S.C. § 2244(b). Accordingly, pursuant to 28 U.S.C. § 1631, this Court respectfully transfers Petitioner's case to the United States Court of Appeals for the Third Circuit, in order that the court of appeals may determine whether said petition may proceed to be addressed on the merits in United States District Court. <u>See</u> 28 U.S.C. § 2244(b)(3).

## I.  BACKGROUND AND PROCEDURAL POSTURE

The background of Petitioner's case spans over thirty years. The portions that are relevant to this Order are as follows. On December 2, 1977, James Peter Alford (hereinafter:

Alford) and Raymond Paul Gierke (hereinafter: Gierke) were murdered in Bear Rocks, Fayette County, Pennsylvania.  See PCRA III Trial Ct. Op., Resp. to Pet for Writ of Habeas Corpus, Appx. 23 (Doc. No. 21-25), at 6.  Nearly five years later, on October 22, 1982, Petitioner was charged with two counts of Criminal Homicide, 18 Pa.C.S.A. § 2501(a), and two counts of Criminal Conspiracy to commit homicide, 18 Pa.C.S.A. § 903, in connection with the murders of Alford and Gierke.  See Doc. No. 21-25, at 6.  Petitioner was tried, along with co-defendant Leon Scaglione (hereinafter: Scaglione), in April of 1983; however, the jury in that first trial was unable to reach a verdict, and a mistrial was declared on April 12, 1983.  See id.  Thereafter, the Commonwealth of Pennsylvania (hereinafter: the Commonwealth) dropped the conspiracy charges and the cases were severed for retrial.

Scaglione was retried in October, 1986, and was found guilty of two counts of first degree homicide and two counts of second degree homicide.  Petitioner was retried in November, 1986, and was found guilty by a jury of one count each of first and second degree murder with respect to Alford, and one count each of first and second degree murder with respect to Gierke.  See PCRA III Superior Ct. Op., Resp to Pet. for Writ of Habeas Corpus, Appx. 25-Part 1 (Doc. No. 21-33), at 7.  On December 8, 1986, Petitioner filed a Motion for New Trial and Arrest of Judgement.  See id.  After oral arguments this motion was denied and, on June 15, 1987, Petitioner was sentenced to serve two consecutive life terms of imprisonment for the first degree murder convictions.  See id.  The trial court did not impose further penalty for the second degree murder convictions.  See id.

On July 14, 1987, Petitioner filed a Notice of Appeal of the judgment and sentence with the Superior Court of Pennsylvania.  See id. at 7.  The Superior Court affirmed the judgment and

sentence of the trial court on November 30, 1990.  See Commonwealth v. Munchinski, 585 A.2d

471 (Pa. Super. Ct. 1990).  Petitioner appealed this decision to the Pennsylvania Supreme Court,

which denied *allocatur* on November 13, 1991.  See Commonwealth v. Munchinski, 600 A.2d

535 (Pa. 1991) (table).

On April 16, 1992, Petitioner filed a Motion for Relief under the Post Conviction Relief

Act (hereinafter: PCRA), 42 Pa.C.S.A. § 9541 *et seq.*[1]  The trial court denied this first PCRA

petition (hereinafter: PCRA I) by Opinion and Order in August 5, 1993.  See PRCA I Trial Ct.

Op., Resp. to Pet. for Writ of Habeas Corpus, Appx. 10 (Doc. No. 20-58), at 2.  Petitioner

appealed this decision to the Superior Court of Pennsylvania, which affirmed the denial of the

PCRA I petition on December 11, 1995.  See Commonwealth v. Munchinski, 674 A.2d 318 (Pa.

Super. Ct. 1995) (table); see also PCRA I Superior Ct. Op., Resp. to Pet. for Writ of Habeas

Corpus, Appx. 12 (Doc. No. 21-5), at 2.  The Pennsylvania Supreme Court denied *allocatur* on

August 30, 1996.  See Commonwealth v. Munchinski, 683 A.2d 879 (Pa. 1996) (table).

On January 6, 1998, Petitioner filed his first petition for writ of habeas corpus, pursuant

---

[1]There have been as many as four PCRA petitions filed by or on behalf of Petitioner in
the history of this case.  The first was filed in1992, (hereinafter: PCRA I).  The second, which
was filed *pro se* by Petitioner on May 12, 2000, was dismissed almost immediately, on May 18,
2000, as an impermissible hybrid *pro se* / counseled petition.  See infra, Part I.  That petition was
followed on July 27, 2000, by a counseled PCRA petition, (hereinafter: PCRA II).  The PCRA II
petition was dismissed on August 24, 2000, for lack of jurisdiction.  See PCRA II Order, Resp.
to Pet. for Writ of Habeas Corpus, Appx. 21 (Doc. No. 21-13), at 2.  This dismissal was not
appealed by Petitioner, but was recognized by the Superior Court in a later proceeding to have
been improper.  See Doc. No 21-33, at 7.  Finally, on March 21, 2001, the latest PCRA petition
was filed, and was adjudicated in the first instance by Senior Judge Barry Feudale.  Throughout
the record, this latest PCRA petition has been referenced almost interchangeably as the "second"
PCRA petition and the "third" PCRA petition.  This Court adopts the nomenclature used by the
Superior Court in its unpublished opinion reversing Judge Feudale's opinion, which references it
as "PCRA III".  Id. at 13-14.

to 28 U.S.C. § 2254, in the United States District Court for the Western District of Pennsylvania. See Pet. for Writ of Habeas Corpus, Munchinski v. Price, No. 98-0010 (W.D.Pa. Sep. 30, 1998) (Doc. No. 1).  This petition was denied as being untimely See Mem. Order Dismissing Pet., Price, No. 98-0010 (Doc. No. 31).  Upon appeal, the United States Court of Appeals for the Third Circuit affirmed the dismissal by the district court on January 24, 2001.  See Munchinski v. Price, 254 F.3d 1078 (3d. Cir. Jan. 24, 2001) (table); see also Munchinski v. Price, No. 98-3551, (3d Cir. Jan. 24, 2001).

On May 12, 2000, during the pendency of his appeal of the dismissal of his first petition for writ of habeas corpus, Petitioner, acting *pro se*, filed another PCRA petition.  See Pro Se PCRA Petition, Resp. to Pet. for Writ of Habeas Corpus, Appx. 16 (Doc. No. 21-9) . This petition was dismissed just six days later, on May 18, 2000, after the trial court determined that Petitioner was still represented by counsel, and it would be unlawful for the matter to proceed on a hybrid basis.  See Doc. No. 21-33, at 11.  On July 27, 2000, Petitioner filed, through counsel, another PCRA petition (hereinafter: PCRA II).  See PCRA II Pet., Resp. to Pet. for Writ of Habeas Corpus, Appx. 17 (Doc. No. 21-11).  In it, Petitioner alleged the existence of newly discovered evidence uncovered during the course of the litigation of his first habeas petition. See id. at 2.  However, instead of addressing this new evidence on the merits, the PCRA II trial court concluded that it lacked jurisdiction to hear the matter because of the pendency of Petitioner's first habeas corpus petition in the United States Court of Appeals.  The PCRA II trial court informed Petitioner on August 3, 2000, that it would dismiss this PCRA petition unless Petitioner responded to the court within ten days.  Petitioner failed to respond and, on August 24, 2000, the PCRA II petition was dismissed.  See Doc. No. 21-13, at 2 .  There is no indication that

4

Petitioner appealed this dismissal to the Superior Court.

On March 21, 2001, less than sixty days after the United States Court of Appeals for the Third Circuit affirmed the dismissal of Petitioner's first habeas petition, Petitioner filed his latest PCRA petition (hereinafter: PCRA III).  This petition was addressed on the merits by Senior Judge Barry F. Feudale.  In his 114-page opinion, Judge Feudale found the actions of the prosecution in Petitioner's 1986 retrial to be so egregious that they ". . .so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." See PCRA III Trial Ct. Op., Resp. to Pet. for Writ of Habeas Corpus, Appx. 23-Part 3 (Doc. No. 21-27), at 31 (emphasis in original removed).  Judge Feudale made a similar finding  regarding the actions of the attorney representing the Commonwealth during Petitioner's first PRCA hearing.  See id. at 35; see also PCRA III Trial Ct. Op., Resp. to Pet. for Writ of Habeas Corpus, Appx. 23-Part 4 (Doc. No. 21-28), at 1-7.  In light of these findings, on October 1, 2004, Judge Feudale ordered that Petitioner's 1986 conviction be vacated.  See Doc. No. 21-25, at 2. Petitioner was to be granted a new trial in the event that contested tape-recorded evidence could be provided for him by the Commonwealth within ten days.  Id.  In the event that the Commonwealth did not provide the evidence, Petitioner's conviction and sentences were to be vacated and he was to be discharged forthwith.  Id. at 3.

The Commonwealth appealed the order of the  PCRA III trial court on October 8, 2004. The Superior Court of Pennsylvania, in an unpublished 119-page opinion, reversed Judge Feudale on December 14, 2005.  See Commonwealth v. Munchinski, 894 A.2d 821 (Pa. Super. Ct. 2005) (table); see also, generally, PCRA III Superior Ct. Op., Resp. to Pet. for Writ of Habeas Corpus, Appx. 25 (Doc. No. 21-34 - Doc. No. 21-37). Petitioner petitioned the

Pennsylvania Supreme Court for *allocatur* on January 16, 2006, and was denied on February 8,

2007.  See Commonwealth v. Munchinski, 918 A.2d 744 (Pa. 2007) (table); see also Pet. for

Allowance of Appeal, Resp. to Pet. for Writ of Habeas Corpus, Appx. 26 (Doc. No. 21-37).   No

petition for *certiorari* to the United States Supreme Court was made.  See Pet'r's Mem. of Law

in Supp. of Application for Writ of Habeas Corpus (Doc. No. 4), at 20.

On December 15, 2007, Petitioner filed this numerically second petition for writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, with this Court.  See Doc. No. 1.  Petitioner

consented to allow this petition to be adjudicated by a United States Magistrate Judge, pursuant

to 28 U.S.C. § 636(c)(1), on June 26, 2008.  See Doc. No. 10.  Respondents consented to the

same on June 30, 2008.  See Doc. No. 11.


## II.  ANALYSIS

28 U.S.C. § 2254 allows a person in custody due to the judgement of a State court to seek

a writ of habeas corpus based "on the ground that he is in custody in violation of the Constitution

or laws or treaties of the United States."  See 28 U.S.C. § 2254(a).   However, with the passage

of the AEDPA in 1996, Congress enacted gatekeeping provisions meant to limit the number of

second or successive applications for the writ in the district courts.  See Pub. L. 104-132, 110

Stat. 1214 (Apr. 24, 1996); see also Stewart v. Martinez-Villareal, 523 U.S. 637, 641 (1998).

The AEDPA provides, in relevant part:

> (3)(A) Before a second or successive application permitted by this
> section is filed in the district court, the applicant shall move in the
> appropriate court of appeals for an order authorizing the district
> court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

(D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

(E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

28 U.S.C. § 2244(b)(3).

Petitioner argues that, despite the fact that his current petition is a successor-in-time to a petition for writ of habeas corpus that he filed in 1998, it does not qualify as a "second or successive" petition under the meaning of the AEDPA.  In asserting this argument, Petitioner relies on Benchoff v. Colleran, in which the United States Court of Appeals for the Third Circuit recognized that the phrase "second or successive" in the AEDPA was a term of art, and that a numerically second or successive habeas petition need not qualify as  "second or successive" if it raised a claim that "had not arisen or could not have been raised at the time of the prior petition." 404 F.3d 812, 817 (3d Cir. 2005).

Since the enactment of the AEDPA's gatekeeping provision, courts have found that petitions filed in two types of cases, although numerically successive, were not "second or successive" petitions under the meaning of section 2244.  The first is where a numerically successive petition attacks a judgment other than the one attacked in the earlier petition.  See,

7

e.g., Benchoff, 404 F.3d at 817-818.  In the case *sub judice*, there is no question that Petitioner is attacking the same State court convictions from which he sought relief in his first habeas petition.  As such, this line of cases provides his argument with little support.

The second line of cases involves a prior habeas petition that was not adjudicated on the merits, such as when a petition is dismissed without prejudice in order to allow more litigation in State court.  See e.g., Martinez-Villareal, 523 U.S. at 644.  It is upon this second line of cases that Petitioner bases his argument that the current petition is not "second or successive" under the meaning of the phrase in the AEDPA.  Specifically, Petitioner argues that the instant petition cannot be determined to be "second or successive" because the earlier petition was dismissed as untimely.  See Doc. No. 4, at 20.  According to Petitioner, such a dismissal is not on the merits. Id.

Petitioner's argument is unpersuasive.  It has been well established that a dismissal of a habeas petition for being time-barred does indeed constitute a disposition of that petition on the merits, which renders a subsequent petition that attacks the same State court conviction to be "second or successive," and thus subject to the gatekeeping provision of section 2244(b)(3)(A). See Murry v. Greiner, 394 F.3d 78, 81 (2d Cir. 2005); see also, Bradley v. Pennsylvania, No. 08-329, 2008 WL 1758902, at *2 (W.D.Pa. Apr. 16, 2008).

Petitioner states that, during the pendency of his appeal of the dismissal of his first habeas petition, he came into possession of certain pieces of after-acquired evidence.  Petitioner further states that he has come into possession of several additional pieces of exculpatory evidence as late as 2003.  See Pet'r's Reply Br. (Doc. No. 25), at 13-14.  Petitioner argues that, based on this evidence, this Court may address his claims on the merits, pursuant to 28 U.S.C. §

2244(b)(2), which states that:

> (b)(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). This would seem to bolster Petitioner's argument. However, as clearly stated in the statute, supra at 6- 7, 28 U.S.C. § 2244(b)(3)(A) specifically prohibits a district court from addressing *any* second or successive petition without first being granted permission to do so by the court of appeals. This applies to new claims based upon after-acquired evidence. See O'Neil v. Grace, Nos. 06-2043 and 99-3762, 2007 WL 2188506 (E.D.Pa. Jul. 27, 2007), at *4 (citing Gonzalez v. Crosby, 545 U.S. 524, 529-30 (2005)). Section 2244(b)(2) merely states the standard by which this Court should review Petitioner's current petition, if and when the Court of Appeals for the Third Circuit allows this case to proceed. Simply put, this Court lacks the authority to address Petitioner's compelling evidence of prosecutorial misconduct, pursuant to section 2244(b)(2), without Petitioner first receiving permission to proceed from the court of appeals, pursuant to section 2244(b)(3).

In the instant application, Petitioner seeks relief from his 1986 homicide convictions in

the Court of Common Pleas, Fayette County, Uniontown, Pennsylvania.  These are the same convictions from which he sought habeas relief in his 1998 petition.  See Report and Recommendation, Price, No. 98-0010 (Doc. No. 28), at 1.  Furthermore, the prior petition was dismissed as for being untimely, which is a determination on the merits for the purposes of the AEDPA.  Thus, Petitioner's current petition is "second or successive," and subject to the AEDPA's gatekeeping provision.

Given that Petitioner's current petition is "second or successive," this Court lacks subject matter jurisdiction to address it on the merits because Petitioner erroneously did not first apply to the court of appeals for permission to proceed.  See Burton v. Stewart, 549 U.S. 147 (2007).  As such, this Court's only options are to dismiss the petition, or to transfer it directly to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 1631.  See Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002); see also 3d Cir. L.A.R. 22.5(h) (setting forth procedures for the certification and transfer of the record in the event that a district court transfers a second or successive *habeas* petition to the court of appeals).  This Court finds that transfer is preferable to outright dismissal, because it ensures that petitioner's filing error will not result in his petition running afoul of the statute of limitations established by the AEDPA.  See 28 U.S.C. § 2244(d).  Specifically, a case transferred under section 1631 will be treated as having been filed in the transferee court on the date on which it was actually filed in the transferor court, which, with respect to the petition *sub judice*, is December 15, 2007.


**IV.  CONCLUSION**

After examining the record, this Court is eager to address Petitioner's claims on their

merits.  However, for the reasons stated above, this Court lacks subject matter jurisdiction to address Petitioner's claims absent permission from the court of appeals.  As such, this Court respectfully transfers Petitioner's case to the United States Court of Appeals for the Third Circuit, in order that it may determine, pursuant to its authority under 28 U.S.C. § 2244(b)(3), whether this second or successive petition for writ of habeas corpus may proceed in United States District Court. An appropriate Order to follow.


Dated:  August 26, 2009                    By the Court:



                                           LISA PUPO LENIHAN
                                           United States Magistrate Judge


cc:      counsel of record